UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:16-cv-00988-TJC-MCR

HUGH A. CARITHERS AND
KATHERINE S. CARITHERS, as
The Assignees of CRONK DUCH
MILLER & ASSOCIATES, INC.,
CRONK DUCH ARCHITECTURE,
LLC, CRONK DUCH CRAFTSMAN,
CRONK DUCH PARTNERS, LLC,
CRONK DUCH HOLDINGS, INC.,
AND JOSEPH S. CRONK,

       Plaintiffs,

vs.

MID-CONTINENT CASUALTY COMPANY,

       Defendant.

_____/

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO FIRST REQUEST FOR PRODUCTION

Plaintiffs, Hugh A. Carithers and Katherine S. Carithers (collectively, "Plaintiffs" or "Carithers"), as assignees of Cronk Duch Miller & Associates, Inc., Cronk Duch Architecture, LLC, Cronk Duch Craftsman, Cronk Duch Partners, LLC, Cronk Duch Holdings, Inc., and Joseph S. Cronk, move this Court for entry of an Order compelling Defendant, Mid-Continent Casualty Company ("MCC" or "Mid-Con") to provide documents responsive to their First Request for Production dated December 16, 2016 and awarding the fees incurred obtaining relief, and in support state:

## INTRODUCTION

This is a statutory insurance lack of good faith case (colloquially called a "bad faith" action), arising out of Mid-Con's systemic and repeated violations of Florida law, including:

MCC's refusal to defend and indemnify the Carithers in relation to an underlying construction defect action; MCC's refusal to pay the undisputed portion of the judgment entered by the trial court that presided over the coverage action filed by the Assignees against MCC[1] upon entry; MCC's refusal to pay the disputed portion of the Coverage Action court's judgment deemed covered/owed on appeal by the Eleventh Circuit[2] upon issuance of its decision; and refusal to pay counsel for the Carithers even the undisputed portion of the fees and costs owed under Florida law as prevailing parties.  These failures are emblematic of MCC's business practices when faced with construction defect claims pending against Florida insureds, and are, at minimum, in reckless disregard for the rights of MCC's commercial general liability ("CGL") insureds, who pay substantial premiums for the defense and indemnity protections sold by MCC. Compensatory and punitive damages are pled under Section 624.155, Florida Statutes.  *See, e.g.,* D.E. 1 at ¶¶ 1-3, 21-25, 28-33, 47-50.

On December 12, 2016, the Carithers served their First Request for Production of Documents ("First RFP") on MCC.[3]  MCC filed responses and objections[4] and amended responses and objections,[5] on February 10, 2017 and May 24, 2017, respectively.  On February 10, 2017 and March 24, 2017, Mid-Con agreed to produce a limited amount of responsive documents – some under a confidentiality agreement.  Yet, consistent with conduct sanctioned in another case, *see First Coast Energy, L.L.P. v. Mid-Continent Casualty Co.*, No. 3:12–cv–281–J–32MCR, 2015 WL 5159140 (M.D. Fla. Sept. 2, 2015), MCC failed to both send a proposed

---

[1] The action styled *Carithers v. Mid-Continent Casualty Co.*, No. 3:12-cv-890-J-34PDB (M.D. Fla.), and hereinafter referred to as "the Coverage Action."
[2] In the action styled *Carithers v. Mid-Continent Casualty Co.*, No. 14–11639 (11th Cir.), and hereinafter referred to as "the Appeal."
[3] A copy of the Carithers' First RFP is attached hereto as Exhibit A.
[4] A copy of MCC's Responses and Objections to Plaintiffs' First RFP is attached hereto as Exhibit B.
[5] A copy of MCC's Amended Responses and Objections to Plaintiffs' First RFP is attached hereto as Exhibit C.

confidentiality agreement for review for more than a month after it promised to do so (on April 27, 2017) and to produce any documents until May 24, 2017 – months after it agreed to do so.[6]

The requests at issue seek information that can be grouped into 5 general categories:

1.  Claims manuals, claims handling standards (Requests 1-3) and training materials (Request 9);

2.  Personnel files, financial benchmarks, targets and goals (Requests 4, 13-14, 16, 18-19);

3.  Documents pertaining to other claims and acts (Requests 11, 20-23);

4.  Underwriting files for Cronk Duch's policies (Request 5); and
5.  Audits of Cronk Duch's and similar claims (Request 10).

The meet-and-confer process has limited the ripe issues to the following:

1.  Whether *First Coast*, No. 3:12-cv-281-J-32MCR (M.D. Fla. Mar. 24, 2014) (D.E. 102) renders documents encompassed by Requests 1-4, 9, 11, 13-14, 16, and 18-23 undiscoverable until this Court finds MCC handled the Carithers' claim in bad-faith.

2.  Requests 1-5, 9-11, 13-14, 16, and 18-23: whether responsive documents are relevant.

3.  Requests 1-4, 10-11, 13-14, 16, 18-23: whether MCC's overbreadth objections preclude production.

4.  Requests 1-3, 11, 21, and 23: whether MCC's proportionality objections preclude production.

5.  Requests 10-11: (A) whether MCC waived its "self-critical analysis" privilege objections by failing to provide a privilege log, and (B) if not, whether those objections preclude production.

6.  Requests 5, 10-11, 19-22: (A) whether MCC waived its confidential and proprietary information objections by failing to provide a privilege log, and (B) if not, whether those objections preclude production.

---

[6] MCC's unilateral setting of the depositions of Joseph S. Cronk and Clifford G. Duch on May 5, 2017, without any effort to coordinate scheduling before serving notices, is further evidence of MCC's overall pattern of discovery violations and use of improper discovery tactics.  *See* Middle District Discovery (2015) at Section II(A)(1) ("An attorney is expected to accommodate the schedules of opposing counsel. In doing so, the attorney should normally pre-arrange a deposition with opposing counsel before serving the notice. *If this is not possible*, counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling.") (emphasis supplied).

7. Requests 1-4 and 22-23: whether the proper time frame is (i) December 20, 2007 to August 3, 2016 (as maintained by the Carithers) or (ii) January 1, 2010 until MCC's resolution of the Carithers' claim (December 1, 2015).

As explained below, the insurer's objections to these requests should be overruled and fees awarded for obtaining the relief sought by this motion.

## REQUESTS AND RESPONSES AT ISSUE

The applicable requests and objections are as follows:

1. Any and all Documents describing or imparting information concerning, in whole or in part, the proper investigation and adjustment of claim, including but not limited to, claims manuals or a similar document or set of documents, used by You or available for use by You, applicable in whole or in part to construction defect claims similar to the Carithers Action, in effect from December 20, 2007, up to and including the date Carithers filed the Instant Action in the State of Florida.

2. Any and all Documents concerning, evidencing, or setting forth standards, written or otherwise, adopted by You that address and/or concern Your receipt of, evaluation of, processing of, and/or response to a request under a liability policy for defense or indemnity coverage by Your insured, named or additional, in whole or in part pertaining to claims in the State of Florida, and in effect from December 20, 2007, up to and including the date the Carithers filed the Instant Action.

3. Any and all Documents concerning, evidencing, or setting forth standards adopted by You that concern the receipt, evaluation, processing, or adjustment of a request on behalf of or by Your insured, named or additional, for defense or indemnity coverage of a construction defect claim in the State of Florida from December 20, 2007, up to and including the date the Carithers filed the Instant Action.

**RESPONSE:** MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent this request seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven. *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant). MCC also objects to this request because it is vague and ambiguous as to the terms "construction defect claims similar to the Carithers Action" and "other similar documents" are undefined with no guidance as to what "similar" entails. MCC further objects to this request as it is not proportional to the needs of the case. MCC has paid all covered damages, and court-ordered fees and interest as well, from the Carithers Action and the burden and expense on MCC to search its database for documents similar to a claims manual for the past ten years far outweigh the needs of this case. Accordingly, this request is outside the scope of discovery as set forth in the Federal Rules of Civil Procedure. Subject to and without

4

waiving these objections, MCC did not have a claims manual or "set of documents" at the time it investigated and adjusted the Carithers claim and suit. However, without waiving these objections, attached to this amended response are emails and other documents pertaining to the handling of construction defect claims which refer to the issues raised by MCC in the Cronk Duch matter from the date MCC was first notified of the Crock Duch claim until the Cronk Duch claim was resolved.[7]

4. Any and all Documents authored or prepared by You or on Your behalf analyzing loss ratios (combined, pure, or otherwise), earnings per share, margin over service cost, returns on investment or other benchmarks for insurance profitability, applicable in whole or in part to Your construction defect exposures, and prepared from December 20, 2007, up to and including the date Carithers filed the Instant Action.  For sake of clarity, we seek documents that would have been circulated to or available to Your management personnel including the head of claims for North America and the head of claims which includes regional responsibility for Florida.

   **RESPONSE:** MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  In addition, MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence as this request seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven.  *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant).

5. Your entire underwriting file for each of the policies sold by You to Cronk Duch.

   **RESPONSE:** MCC objects to this request as it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  In addition, the request seeks information which is confidential and proprietary in nature.  Pursuant to the agreement of the parties, counsel for MCC reviewed the underwriting files to determine if there were any documents in the underwriting files regarding the interpretation of any policy provision upon which MCC relied upon in the Cronk Duch matter and, without waiving their right to contest the admissibility of such evidence in this case, there were no such documents in the Cronk Duch underwriting file.

9. Any and all Documents provided by You to claims examiners or adjusters pertaining to or concerning the ML 13 70 (11 11) Endorsement including those prepared by underwriting or underwriters to assist claims examiners, analysts, or adjusters such as John R. Neff, Sharlateen Boston, Yvonne Lanyon, and/or Cindy Romesburg.

   **RESPONSE:** MCC objects to this request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence, as this request seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven.  *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*,

---

[7] MCC's objections to Requests 1-3 are virtually identical.

Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant).  In addition, this requests seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence since none of the policies of insurance issued by MCC to Cronk Duch include the ML 13 70 (11 11) Endorsement.

10. Any and all Documents concerning, in whole or in part, any open and closed file audits performed by You or on Your behalf of Cronk Duch's claims, underwriting or combined claims/underwriting.

  **RESPONSE:** MCC objects to this request because it is overbroad and seeks documents which are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  In addition, MCC objects to this request as it seeks documents that are protected from production under the self-critical analysis privilege and that are confidential and proprietary in nature.  *See, e.g., Reichhold Chemicals, Inc. v. Textron, Inc., et al.*, 157 F.R.D. 522 (N.D. Fla. 1994).

11. Any and all Documents concerning, in whole or in part, any open and closed file audits performed by You or on Your behalf of those claims identified in paragraph 48 of the Complaint in this action, including but not limited to underwriting or combined claims/underwriting audits.

  **RESPONSE:**  MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  In addition, MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence as this request solely seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven.  *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant).  In addition, MCC objects to this request as it seeks documents that are protected from production under the self-critical analysis privilege and that are confidential and proprietary in nature.  *See, e.g., Reichhold Chemicals, Inc. v. Textron, Inc., et al.*, 157 F.R.D. 522 (N.D. Fla. 1994).  MCC further objects to the extent this request seeks confidential information pertaining to MCC insureds other than Cronk Duch.  Moreover, MCC objects to this request as it is not proportional to the needs of the case.  MCC has paid all covered damages, and court-ordered fees and interest as well, from the Carithers Action and the burden and expense on MCC to search its database for open and closed file audits pertaining to thirteen claims far outweigh the needs of this case.  Accordingly, this request is outside the scope of discovery as set forth in the Federal Rules of Civil Procedure.

13. Any and all Documents, including but not limited to personnel files, concerning Yvonne Lanyon including incentive compensation information, training, discipline history, commendations, accolades, and/or bonus information.

14. Any and all Documents, including but not limited to personnel files, concerning Cindy Romesburg including incentive compensation information, training, discipline history, commendations, accolades, and/or bonus information.

16.  As limited in Request number 12, any and all Documents typically contained in a personnel file, including but not limited to personnel files, concerning any of Your agents that worked on those claims identified in paragraph 48 of the Complaint in this action including incentive compensation information, training, discipline history, commendations, accolades, and/or bonus information.

18. Any and all Documents that describe or contain information concerning any bonus, point, bravo award, or similar incentive compensation to which the persons identified in Request Numbers 12-16 may have been entitled, regardless of whether that person received any such bonus or award.

   **RESPONSE:** MCC objects to this request because it is overbroad as to scope and time.  MCC also objects to this request to the extent it is vague and ambiguous as to the term "incentive compensation" as it is not defined.   MCC further objects to this request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence as Yvonne Lanyon was not involved in MCC's handling of the Carithers claim at issue.  In addition, MCC objects to this request because it is overbroad as to scope and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence as this request solely seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven.  *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant).[8]

19. Your financial statements for the four year period preceding this request to produce, including those portions applicable to the State of Florida.

20. The non-privileged portions of Your entire claims files, concerning the cases and claims identified in paragraph 48 of the Complaint in this action  whether electronic, paper or both, and whether local, regional, home office or specialty, from the date of first notice of the claim.

22. A complete list, as required to be maintained under Florida law, of any complaints, grievances or civil remedy notices pertaining to Your adjustment or handling of any claim under a liability policy from January 1, 2007 through to the present.

   **RESPONSE:** MCC objects to this request because it is overbroad as to scope and time. In addition, this request seeks information that is confidential and proprietary in nature to the extent it seeks documents that are not filed by MCC with the state as required under Florida law, and which are already public record.  MCC further objects to this request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence, as this request seeks evidence pertaining to Plaintiffs' pattern and practice allegations and Plaintiffs' bad faith claims have not been proven.  *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice

---

[8] MCC's objections to Requests 13-14, 16, and 18 are virtually identical.

evidence becomes relevant). Subject to and without waiving these objections, MCC will produce the Annual Statements filed by MCC with the Florida Office of Insurance Regulation.[9]

21. Any and all Documents which identify in a spreadsheet or other documentary form in a list, those cases or claims brought, filed, or tendered to You in the State of Florida for defense or indemnity under a liability policy from January, 2007 through the date of this Request.

**RESPONSE:** MCC objects to this request because it is overbroad as to scope (*e.g.*, it is not limited to construction defect claims) and time and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence. In addition, MCC objects since the term "other documentary evidence" is undefined and therefore vague and ambiguous. MCC also objects to this request because it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence as this request solely seeks evidence pertaining to Plaintiffs' pattern and practice allegations as the Plaintiffs' bad faith claims have not been proven. *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant). MCC also objects to the extent this request seeks confidential information pertaining to MCC insureds other than Crock Duch. Finally, MCC also objects to this request as it is not proportional to the needs of the case. MCC has paid all covered damages, and court-ordered fees and interest as well, from the Carithers Action and does not maintain a spreadsheet that specifically lists those cases or claims brought, filed, or tendered to MCC in the State of Florida for defense or indemnity under a liability policy from January, 2007 through the date of this Request. Accordingly, this request is outside the scope of discovery as set forth in the Federal Rules of Civil Procedure.

23. Any and all documents which describe or discuss any changes to Your policies or procedures in responding to tenders of defense or indemnity due to the 11th Circuit's decision described in the Complaint in this action.

**RESPONSE:** MCC objects to this request because it is overbroad as to scope, insofar as it seeks documents for "any" policy or procedure, and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence. MCC also objects as this request seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence pertaining to Plaintiffs' pattern and practice allegations and the Plaintiffs' bad faith claims have not been proven. *See, First Coast Energy, L.L.P. v. Mid-Continent Casualty Company*, Case No. 3:12-cv-281-J-32MCR (M.D. Fla. March 24, 2014) (Order) (holding plaintiff must first prove defendant acted in bad faith before pattern and practice evidence becomes relevant). MCC also objects to this request as it is not proportional to the needs of the case. MCC has paid all covered damages, and court-ordered fees and interest as well, from the Carithers Action and the burden and expense on MCC to search its database for these documents far outweigh the needs of this case. Accordingly, this request is outside the scope of discovery as set forth in the Federal Rules of Civil Procedure.

## <u>MEMORANDUM OF LAW</u>

A party is entitled to discovery regarding any non-privileged matter that is relevant to any

---

[9] MCC's objections to Requests 19-20, and 22 are virtually identical.

party's claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(B)(1).

"Relevance" is construed broadly to encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case. *Cinclips,*

*LLC v. Z Keepers, LLC*, No: 8:16-CV-1067-T-23JSS, 2017 WL 1065560, at *1 (M.D. Fla. Mar.

21, 2017). Documents need not be admissible in evidence to be discoverable. *Id.* The party

resisting production of information bears the heavy burden of establishing lack of relevancy,

overbreadth, and undue burden (i.e. proportionality). *Id.* Courts consider the following factors

when evaluating proportionality: (1) the importance of the issues at stake in the action; (2) the

amount in controversy; (3) the parties' relative access to relevant information; (4) the parties'

resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden

or expense of the proposed discovery outweighs its likely benefit. *Id.* (quoting FED. R. CIV. P.

26(b)(1)).

## I.    DOCUMENTS SOUGHT BY REQUESTS 1-4, 9, 11, 13-14, 16, AND 18-23 ARE DISCOVERABLE.

### A.    *The Carithers may obtain documents responsive to these requests without first establishing MCC acted in bad faith.*

#### i.    *First Coast does not authorize bifurcation of this action.*

This is an action predicated on MCC's violations of Sections 624.155(1)(b)(1),

626.9541(1)(i)(3)(a)-(d), (f), and (g) and seeks punitive damages pursuant to Section 624.155(5),

Florida Statutes. Punitive damages are recoverable if the Carithers can establish MCC's conduct

giving rise to the statutory violations occurred "with such frequency as to *indicate a general*

*business practice.*" FLA. STAT. § 624.155(1)(b)(5) (emphasis supplied). The statute requires only

that the evidence "indicate" a general business practice, imposing a much lesser burden than to

"prove." *See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S.

194, 200 (1993) ("'indicates' certainly imposes less of a burden than, say 'requires' or 'necessitates'"). While "prove" means "to test the truth, validity, or genuineness of," "indicate" means "to serve as a sign or symptom of." *Indicate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/thesaurus/indicate, (last visited June 2, 2017); *Prove*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/prove, (last visited June 2, 2017); *see also Prove,* BLACK'S LAW DICTIONARY (10th ed. 2014). While Florida Statutes do not define "general business practice," courts have held a general business practice can be indicated through "some evidence other than simply [the insurer]'s behavior 'within [the insured]'s own claim.'" *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-CV-00386, 2009 WL 2252094, at *2 (M.D. Fla. July 24, 2009).

In *First Coast*, No. 3:12–cv–281–J–32MCR, 2013 WL 2106829 (M.D. Fla. May 15, 2013), Judge Richardson held that Mid-Con, when faced with a general business practices claim, had to produce material in its other insureds' claim files that related to the manner in which MCC handled other similar claims (pollution liability and environmental damage claims) because such materials were relevant to determining MCC's general course of business in handling those types of claims. *See id.* at *3. The court further explained that: "[MCC's] handling of the other claims files is 'an issue directly bearing on [MCC's] punitive damage liability exposure under statutory language authorizing recovery of such damages where [MCC's] bad faith claims practices occur with such frequency as to indicate a general business practice.'" *Id.* (quoting *Mayfair House Ass'n, Inc. v. QBE Ins. Corp.*, No. 09-80359-CIV, 2010 WL 472827, at *3 (S.D. Fla. Feb. 5, 2010)).

Mid-Con's handling of other construction defect and property damage claims files, as in *First Coast*, bears directly on Mid-Con's general business practices in handling those similar

claims.  *See id.*; *Royal Marco Point I Condo. Ass'n, Inc. v. QBE Ins. Co.,* No. 2:07-cv-00016-CEH-SPC, at 4 (M.D. Fla. June 30, 2010) (D.E. 229) (plaintiff who demonstrated a substantial basis for its punitive damages claim was permitted to engage in "other claims" discovery); *Jablonski*, No. 07-cv-00386, at 2 (M.D. Fla. Apr. 30, 2009) (D.E. 291) (finding similar claims discovery proper in a general business practice case; permitting inquiry into prior punitive damage awards arising out of similar bad faith claims); *Howell-Demarest v. State Farm Auto. Ins. Co.,* 673 So. 2d 526, 529 (Fla. 4th DCA 1996) (recognizing that evidence of "other claims" was a type of "other act" evidence tending to demonstrate a general business practice).[10]  It is also, as detailed in Section I.A.ii. *infra*, relevant to the Carithers' statutory bad faith claim.

Nevertheless, MCC takes the position that because Judge Richardson bifurcated the first party bad faith claim from the general business practice claim, *see First Coast*, No. 3:12–cv–281–J–32MCR (M.D. Fla. Mar. 24, 2014) (D.E. 102)*,* discovery of general business practices is not relevant until the Carithers first establish MCC handled their claim in bad faith.

The court's "bifurcation" in *First Coast,* however, stemmed from the parties' agreement to prove bad faith first.  *Id.*  Here, no such agreement has been reached.  The agreement between First Coast and MCC renders the court's decision in *First Coast* dicta, which "is not binding on anyone for any purpose."  *Auto-Owners Ins. Co. v. Elite Homes*, 160 F. Supp. 3d 1037, 1313 (M.D. Fla. 2016).

---

[10] *See also Dunn v. Nat'l Sec. Fire & Cas. Co.,* 631 So. 2d 1103, 1110 (Fla. 5th DCA 1993), *receded from on other grounds in Boozer v. Stalley*, 146 So. 3d 139 (Fla. 5th DCA 2014) ("Discovery far beyond a single claim or litigation file may be necessary to establish a 'practice.'"); *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1289 (M.D. Fla. 2009) (finding a "Multistate Market Conduct Examination" that included information about the insurer's conduct – a "high reversal rate of reassessed claims initially denied over an eight-year period" – "plausibly establishes a general business practice by [the insurer] to deny claims in reckless disregard for insureds' rights"); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595T24TGW, 2009 WL 3712343, at *7 (M.D. Fla. Nov. 5, 2009), *aff'd*, 422 Fed. Appx. 812 (11th Cir. 2011) (denying insurer's motion in limine to prevent evidence of certain companywide business practices that harmed plaintiff); *Hayas v. GEICO Gen. Ins., Co.*, No. 8:13-CV-1432-T-33AEP, 2014 WL 5590808, at *9 (M.D. Fla. Nov. 3, 2014) ("An insurance company's failure to have appropriate procedures in place, as well as general business practices of improper conduct, may be evidence of bad faith."); *Jackson*., 600 S.E.2d at 357–58.

The Carithers should be allowed to proceed with general business practice discovery now without bifurcation.  This follows the practice of other Middle and Southern District courts regarding general business practice discovery.  *See First Coast*, 2013 WL 2106829, at *3; *Mayfair House*, 2010 WL 472827, at *4; *Royal Marco,* No. 2:07-cv-00016-CEH-SPC, at 4 (M.D. Fla. June 30, 2010) (D.E. 229); *Jablonski*, No. 07-cv-00386, at 2 (M.D. Fla. Apr. 30, 2009) (D.E. 291).  No other Florida court has "bifurcated" general business practice discovery absent agreement of the parties.  There is moreover a fundamental difference between first-party and liability insurance which militates against any bifurcation.  Here (and unlike a first-party claim), a court has already determined that MCC breached its fiduciary obligation to defend eliminating any possibility that general business practice discovery will proceed without being tethered to an adjudicated underlying wrong.  Thus, any stay of such discovery pending proof of an underlying wrong is unwarranted.

> ii.     **Bifurcation is inappropriate because the discovery sought is relevant to both the Carithers' statutory bad faith *and* general business practice claims.**

Bifurcation is also not warranted because Requests 1-4, 9, 11, 13-14, 16, and 18-23 seek documents also relevant to the Carithers' statutory bad faith claim, sans consideration of punitive damages and recidivism.  Under Florida law, the determination of whether an insurer failed to pay when it could and should have done so involves a totality of circumstances analysis.  *See State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62 (Fla. 1995); *First Coast*, No. 3:12–cv–281–J–32MCR, at 9 (M.D. Fla. June 18, 2013) (D.E. 65).  To determine under all the circumstances whether an insurer failed to act in good faith, the insurer's motives and general business practices come into play, regardless of whether punitive damages are at issue.

Thus, and for example, internal Mid-Con documents or other claims may indicate a plan whereby Mid-Con denies its defense obligation in cases where it is clearly owed.  Such evidence is relevant to the Carithers' claims that they were not treated fairly, the insurer considers its own interests to the exclusion of its insureds (including the Carithers), and Mid-Con has failed to implement standards for the proper investigation and handling of claims.  And these contentions are all relevant to the issue of whether Mid-Con handled the Carithers' claim in good faith.

Precluding other claim evidence with respect to bad faith claims where punitive damages are not sought and/or not recoverable by statute invites the Court to divorce consideration of what the insurer did and why from the issue of its good faith claim handling; a result plainly not supported by case law.  *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595T24TGW, 2009 WL 3712343, at *7 (M.D. Fla. Nov. 5, 2009), *aff'd*, 422 Fed. Appx. 812 (11th Cir. 2011)  (denying insurer's motion in limine to preclude introduction of evidence of insurer's company-wide business practices that harmed the insured, reasoning such evidence was relevant to bad faith action and explaining "such policies, practices, and procedures are probative as long as [the insured] shows that he was directly harmed by them (i.e., that the bad faith in handling his claim resulted, at least in part, from these policies, practices, and procedures)"); *Hayas v. GEICO Gen. Ins., Co.*, No. 8:13-CV-1432-T-33AEP, 2014 WL 5590808, at *9 (M.D. Fla. Nov. 3, 2014) ("An insurance company's failure to have appropriate procedures in place, as well as general business practices of improper conduct, may be evidence of bad faith."); (denying insurer's motion in limine to preclude introduction of evidence of its policies, manuals, and training materials, reasoning such evidence may be relevant to bad faith action; explaining "[a]n insurance company's failure to have appropriate procedures in place, as well as general business practices of improper conduct, may be evidence of bad faith."); *Fox Haven of Foxfire Condo. IV Ass'n,*

*Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:13–cv–399–FtM–29CM, 2014 WL 6389668, at *5 (M.D. Fla. Nov. 14, 2014), *objections overruled,* 2014 WL 7405758 (M.D. Fla. Dec. 30, 2014) (granting insured's motion to compel documents pertaining to insurer's incentive compensation programs, reasoning such documents were relevant to insured's bad faith action).[11]

### B.   *The documents encompassed by these requests are otherwise relevant.*

#### i.   **Claims manuals, documents describing claims handling standards, and training materials (Requests 1-3; 9).**

The manner in which MCC investigated, evaluated, and handled the Carithers' claim is at issue in this case.   Claims manuals, documents describing claims handling standards, and training materials may establish how MCC directs its adjusters, agents and employees to handle claims in order to establish (1) whether MCC handled the Carithers' claim in accordance with MCC's general business practices, (2) whether MCC's claims handling and general business practices conform with insurance industry standards, (3) whether MCC used improper financial incentive programs to achieve company goals related to claim handling, and (4) whether MCC failed to adopt and implement standards for the proper investigation of claims.   MCC's relevance objection to Requests 1-3 and 9 should be overruled.   *See Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10-cv-753-FtM-36SPC, 2011 WL 4596060, at *9 (M.D. Fla. Oct. 3, 2011) (compelling production of claims manuals in bad faith action); *Royal*

---

[11] *See also Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1009 (D. Ariz. 2013) (denying insurer's motion for summary judgment on bad faith claim because claimant produced evidence of the insurer's claims management practices and policies; explaining that "setting *arbitrary* goals for reduction in claims paid or linking salaries and bonuses to claim payouts can be unreasonable" and stating a jury could reasonably find the insurer's arbitrary goals constituted evidence of bad faith (the insurer acted unreasonably and knew it)) (emphasis in original); *Rinehart v. Shelter Gen. Ins. Co.,* 261 S.W.3d 583, 591 (Mo. Ct. App. 2008) (affirming lower court's finding that evidence regarding insurer's handling of another similar claim was admissible in bad faith action, as there was a sufficient nexus between the insured's claim and the other claim and the evidence was relevant to the insurer's state of mind – a necessary element of the insured's bad faith claim); *Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1335-36 (7th Cir. 1989) (affirming lower court's denial of insurer's motion for judgment notwithstanding the verdict; jury found insurer engaged in unreasonable and vexatious conduct in denying claim for life insurance benefits; reasoning that jury could find it was unreasonable for insurer to deny coverage, given evidence of other instances where insurer misrepresented and waived policy conditions and that insurer was well aware of its previous misrepresentations).

*Marco*, No. 2:07-cv-00016, at 6, 8 (M.D. Fla. Mar. 27, 2009) (D.E. 159) (compelling production

of training materials in bad faith action); *Jablonski*, No. 07-cv-386-FtM-29SPC, at 1, 3 (M.D.

Fla. Sept. 17, 2008) (D.E. 132) (ordering production of claims handling/training manuals and

guidelines in bad faith action); *Geico Cas. Co. v. Beauford*, No. 8L05-cv-697-24EAJ, 2006 WL

4774798 (M.D. Fla. Aug. 22, 2006) (manuals and guidelines for audits and reviews of the subject

claims were relevant for discovery purposes); *Auto-Owners v. Totaltape, Inc.*, 135 F.R.D. 199

(M.D. Fla. 1990) (requiring carrier to produce claims manuals and guidelines).[12]

>       **ii.**    **Personnel files, financial targets, benchmarks, and goals
>                  (Requests 4, 13-14, 16, 18-19).**

Personnel files[13], financial targets, benchmarks, and goals are routinely ordered produced

in bad faith actions as potentially important circumstantial evidence of a carrier's motives or

intent to deny valid claims.  *See, e.g., MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*,

No. 8:14-cv-3139-T-23MAP, at 3 (M.D. Fla. Nov. 28, 2016) (D.E. 147) (noting "[c]ourts have

permitted discovery of financial documents relating to profitability" as potential evidence of the

insurer's reprehensibility and recidivism; ordering production of "financial benchmarks, goals,

and targets for profitability/earnings and the earnings relative to those targets for 2002-present"

relating to the strategic business units involved in overseeing the types of claims at issue); *MI*

*Windows*, No. 8:14-cv-3139-T-23MAP, 2016 WL 7213270, at *6 (M.D. Fla. Oct. 20, 2016)

(ordering production of financial documents relating to profitability; ordering production of

personnel files and incentive compensation information concerning the individuals who handled

---

[12] *See also Ford v. Gov't Emp's Ins. Co.*, No. 1:14cv180-MW/GRJ, 2015 WL 11109373, at *5-6 (N.D. Fla. Apr. 3, 2015) (compelling production of documents containing standards and protocols that guide the carrier's agents in adjusting claims, holding such materials were relevant because "adherence—or the lack of—to these standards by the [insurer's] adjusters in this case goes to the question of bad faith"); *Saewitz v. Lexington Ins. Co.*, No. 05-21917-CIV-Lenard/Klein (S.D. Fla. Apr. 10, 2006) (D.E. 56) (claims training materials and coverage interpretation manuals were "well within the scope of Rule 26" as they related to 2 areas of potential liability:  the carrier's statutory bad faith and general business practice liability); *Nowak v. Lexington Ins. Co.*, No. 05-21682-Moreno/Simonton (S.D. Fla. Mar. 16, 2006) (D.E. 71) (requiring carrier to produce training materials and manuals).

[13] The Carithers do *not* seek medical or other personal information.

the underlying claims and coverage action); *Royal Marco,* No. 2:07-cv-00016-CEH-SPC, at 4 (M.D. Fla. June 30, 2010) (D.E. 229) (plaintiff who demonstrated a substantial basis for its punitive damages claim was permitted "to engage in…net worth, financial incentive, and money-flow discovery"); *Jablonski*, No. 07-cv-386-FtM-29SPC, at 3-4 (M.D. Fla. Sept. 17, 2008) (D.E. 133) (ordering production of financial motive evidence in bad faith action, holding such evidence "is relevant because it will aid the prospective jurors in making a determination regarding the nature of how the claims processors are rewarded and trained to process claims"; ordering production of personnel files concerning the individuals who handled the underlying claim).[14]

Personnel files containing information about incentive compensation programs and adjuster performance reviews (Requests 13, 14, 16, 18) may demonstrate whether individuals handling similarly situated claims were reprimanded or rewarded for their conduct, whether these individuals have a history of mishandling claims, or whether MCC has a financial incentive plan that rewards its employees for handling claims in the manner it handled the Carithers'. Benchmarks for profitability (Request 4) and financial statements (Request 19) may similarly

---

[14] *See also Ford*, No. 1:14cv180-MW/GRJ, 2015 WL 11109374, at *4 (N.D. Fla. June 11, 2015) (affirming previous order granting insured's motion to compel production of personnel files of 7 employees who handled the claim, holding such documents were "highly relevant to this lawsuit.  The nub of Ms. Ford's claim is that Geico attempted in bad faith to save $10,000…the financial incentives of both groups is certainly relevant to this action."); *B-K Cypress Log Homes, Inc. v. Auto-Owners Ins. Co.*, No. 1:09-cv-00211-MP-AK, at 3-4 (N.D. Fla. May 21, 2012) (D.E. 243) (ordering production of reports, statements, or accounting summaries demonstrating the carrier's loss ratios, expense ratios, and combined ratios, stating "[the carrier's] financial information is plainly relevant to [the insured's] punitive damages claim."); *Woolbright v. Geico Gen. Ins. Co.*, No. 12-21291-CV-UNGARO/TORRES, 2012 WL 12864931, at *6 (S.D. Fla. Nov. 16, 2012) (requiring production of personnel information concerning the individuals who handled the underlying claim, holding such documents were relevant to general business practice claim); *Kafie v. Nw Mut. Life Ins. Co.*, No. 11–21251–CIV, 2011 WL 4636889, at *2 (S.D. Fla. Oct. 6, 2011) (compelling production of personnel files for 6 employees, holding "the evaluation of the work performance and discipline of the relevant employees, as well as the education and training of those employees may be relevant to ascertaining why the Plaintiff's claim was handled in a particular manner.  Similarly, the compensation paid to those adjusters/employees may be relevant to determining whether, in processing or disposing of claims, including plaintiff's claim, the adjusters were motivated by financial incentives/bonuses."); *Fox Haven*, 2014 WL 6389668, at *5 (noting that incentive compensation programs are relevant in a bad faith action); *Zilisch v. State Farm Mut. Auto. Ins. Co.*,995 P.2d 276, 280 (Ariz. 2000) ("There was sufficient evidence in this case from which a jury could find that State Farm acted unreasonably and knew it.  There was evidence that State Farm set arbitrary goals for the reduction of claims paid.  The salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims."); *Demetrulias*, 917 F. Supp. 2d at 1009.

reveal that Mid-Con places profit above the interests of its insureds and may support either a compensatory award or indicate the presence of a general business practice.  *See Flying Fish Bikes Inc. v. Giant Bicycle, Inc.*, 181 F. Supp. 3d 957, 977 (M.D. Fla. 2016) ("a defendant engages in 'repeated actions' by committing several acts or omissions that are not similar but are in pursuit of the same goal.").   These documents are also necessary for the independent evaluation of the quantum of punitive damages which might be obtained.

### iii.      Documents related to either Cronk Duch's claims or claims of other insureds (Requests 10-11, 20-23).

Requests 10-11 and 20-23 seek audits of Cronk Duch's claims, audits, claim files pertaining to other cases/claims, cases/claims tendered to MCC for defense and/or indemnity under liability policies, and changes to MCC's policies and procedures after the Appeal.  Audits of open and closed claim files typically contain relevant information regarding claim handling benchmarks, practices, and targets as measured by internal insurer-established goals.   The carrier's knowledge of its conduct as evidenced by audits of/its handling of Cronk Duch's claims (Request 10), and handling of other like claims (Requests 11 and 20-21), policyholder complaints, lawsuits, regulatory actions, or the imposition of extra-contractual damages (Request 22), and/or as evidenced by action taken by MCC to remedy its claim handling practices due to the Eleventh Circuit's decision issue in the Appeal (Request 23) is relevant to the reasonableness of MCC's handling of the Carithers' claim.

Such evidence is also relevant to the Carithers' general business practice claim, as it bears on the reprehensibility of MCC's misconduct.  *See, e.g., MI Windows*, No. 8:14-cv-3139-T-23MAP, at 2 (M.D. Fla. Nov. 28, 2016) (D.E. 147) ("recent evidence of other insureds' allegations against [the insurer]" "are generally relevant as evidence of general business practices") (citing *Pepperwood of Naples*, 2011 WL 3841557, at *3); *Beauford*, 2006 WL

17

4774798, at *1-2 (granting defendant's motion to compel audits regarding the subject claims, holding audits were relevant to the claims and defenses of the parties, including defendant's bad faith counterclaim); *First Coast*, 2013 WL 2106829, at *3 (ordering production of claim files for claims made under policies similar to plaintiff's as being relevant to the insurer's punitive damages exposure); *Royal Marco,* No. 2:07-cv-00016-CEH-SPC, at 4 (M.D. Fla. June 30, 2010) (D.E. 229) (plaintiff who demonstrated a substantial basis for its punitive damages claim was permitted "to engage in 'other claims' discovery"); *Jablonski*, No. 07-cv-00386, at 2 (M.D. Fla. Apr. 30, 2009) (D.E. 291) (finding similar claims discovery proper in a general business practice case; permitting inquiry into prior punitive damage awards arising out of similar bad faith claims); *T.D.S. Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1527 (11th Cir. 1985) (evidence of insurer's litigation misconduct is probative of insurer's recklessness and therefore admissible as evidence warranting punitive damages).[15] For example, the documents sought in Request 22 may demonstrate that MCC does not study how its business practices impact the proliferation of consumer complaints, which is relevant to the Carithers' punitive damages claim.

### C.     MCC's overbreadth objections to Requests 1-4, 10-11, 13-14, 16, and 18-23 are without merit.

---

[15]   *See also Mayfair House*, 2010 WL 472827, at *4 (granting "discoverability of other insured claims files" because "they relate to and illuminate the manner in which the company handles claims of its other policyholders in the general course of its business – an issue directly bearing on the company's punitive damage liability exposure"); *Woolbright*, 2012 WL 12864931, at *7-9 (compelling production of documents concerning other claims/lawsuits and CRNs, holding policyholders were "entitled to this discovery for their general business practice claim"); *Simon v. Pronational Ins. Co.*, No. 07-60757-CIV, 2007 WL 483477, at *2 (S.D. Fla. Nov. 1, 2007) (granting plaintiff's motion to compel CRNs and related correspondence and documents regarding similarly situated policyholders); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) (insurer's conduct in other cases – even out of state – may be probative of insurer's motive and recidivism; *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n. 21, 576-77 (1996) (evidence of out-of-state conduct may be relevant to the degree of reprehensibility of defendant's conduct; "[c]ertainly, evidence that a defendant has repeatedly engaged in prohibited conduct *while knowing or suspecting that it was unlawful* would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.") (emphasis supplied); *Rinehart*, 261 S.W.3d at 591 ("Evidence of conduct not directly related to the claim becomes admissible if the acts are sufficiently connected to show the defendant's disposition, intention, or motive in the acts central to the current claim of damage."); *Lorang v. Fortis Ins. Co*, 192 P.3d 186, 206 (Mont. 2008) (stating insurer's conduct that was previously litigated and decided in a prior suit was "an important consideration on a limited basis—i.e., a recidivist may be punished more severely than a first-time offender where…'the conduct in question replicates the prior transgressions'").

MCC objects to Requests 1-4, 10-11, 13-14, 16, and 18-23 as being overbroad in time and/or scope.  Most objections are mere boilerplate and should be overruled.  *See Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16–cv–791–T–36AAS, 2017 WL 735457, at *3 (M.D. Fla. Feb. 24, 2017); *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007); *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Group*, No. 5:03-cv-420-Oc-10GRJ, 2005 WL 5177325, at *1 (M.D. Fla. June 8, 2005).  Mid-Con contends Requests 2-3 are overbroad in scope because this case has nothing to do with defense or indemnification of an additional insured.  But an additional insured receives the exact same coverage as a named insured under a separation of insureds provision.  *See e.g. Taylor v. Admiral Ins. Co.*, 187 So. 3d 258, 260-62 (Fla. 3d DCA 2016) (citing *Evanston Ins. Co. v. Design Build Interamerican, Inc.*, 569 Fed. Appx. 739 (11th Cir. 2014); *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994)).  MCC's handling of claims made by additional insureds for coverage in construction defect cases such as the one brought by the Carithers is relevant.

MCC also claims Requests 10 and 11 are overbroad.  Not so.  Request 10 is appropriately limited to audits performed with respect to Cronk Duch's claims.  Request 11 is narrowly tailored to audits performed for the specific claims listed in paragraph 48 of the Carithers' Complaint.

MCC's overbreadth objections to Requests 16 and 18 are premised on the notion that the Carithers are not entitled to conduct general business practice discovery.  These requests seek to uncover whether MCC has a financial incentive plan that explains why the carrier handled the Carithers' claim, *or* other claims, in the manner it did.  And because Mid-Con's handling of the Eleventh Circuit's decision in the Appeal is directly related to the Carithers' claim, the carrier's overbreadth objection to Request 23 should also be overruled.

### D. *MCC's proportionality objections to Requests 1-3, 11, 21, and 23 fail.*

MCC claims the sixth proportionality factor – "whether the burden or expense of the proposed discovery outweighs its likely benefit" – renders Requests 1-3, 11, 21, and 23 not proportional. But the carrier's objection is entirely unsubstantiated by facts or objective affidavits supporting its contention. MCC's proportionality objections thus fail. *See, e.g., Balfour Beatty Infrastructure, Inc. v. PB&A, Inc.*, No. 16–mc–52–Orl–37GJK, 2016 WL 7743032, at *4 (M.D. Fla. Nov. 30, 2016) (overruling as not well-founded an unduly burdensome objection because the responding party failed to provide supporting facts or affidavits); *Arval Serv. Lease S.A. v. Clifton*, No. 14-cv-1047-J-39MCR, 2015 WL 12818837, at *2 (M.D. Fla. June 23, 2015) ("An undue burden is one which is beyond that normally necessary….Undue burden requires parties to show more than expense or difficulty….A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved."); FED. R. CIV. P. 26(b) Advisory Committee Notes ("[Restoring the proportionality calculation to Rule 26(b)(1) is not] intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional.").

Other proportionality factors weigh in favor of production. The amount in controversy (the second factor) may well be above $1 million. As noted above, these requests seek evidence of MCC's conduct, both with respect to the Carithers' claim and other claims throughout Florida. These requests are thus crucial to resolving the issues in this case (the fifth factor). Only MCC has access to these documents; the Carithers have no other way of obtaining them (the third factor). This information asymmetry weighs in favor of proportionality. *See* FED. R. CIV. P. 26(b) Advisory Committee Notes.

### E.   MCC's "self-critical analysis" privilege and confidential and proprietary information objections to Requests 10-11 and 19-22 fail.

When a party withholds information that is otherwise discoverable claiming privilege or immunity, the withholding party must:  "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5). A privilege log is required.  *U.S. ex rel. Baklid–Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09–CV–1002–ORL–31, 2012 WL 5415108, at *4 (M.D. Fla. Nov. 6, 2012).  The log must describe the documents withheld with enough specificity to assess the applicability of the privilege.  *See id.; First Coast*, No. 3:12-cv-281-J-32MCR, at 2 (M.D. Fla. Aug. 5, 2014) (D.E. 132).  Mid-Con has not provided a privilege log.  Its "self-critical analysis" privilege and confidential and proprietary information objections should thus be deemed waived.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, No. 606CV1703ORL19JGG, 2007 WL 1192401, at *2-4 (M.D. Fla. Apr. 23, 2007).

In addition, the carrier's "self-critical analysis privilege" objections fail.  *See, e.g.*, *Beauford*, 2006 WL 4774798, at *1-2 (rejecting carrier's objection to production of documents in a bad faith case based on an alleged common law self-critical analysis privilege, noting in Florida, privileges only exist by statute; stating "[e]ven assuming a common law privilege was established in this case, the barest assertion of the privilege by Geico and the lack of an affidavit supporting such an assertion fails to meet Geico's burden to show that these documents are privileged").

MCC cites *Reichhold Chemicals, Inc. v. Textron, Inc.,* 157 F.R.D. 522 (N.D. Fla. 1994) in support.  That case, however, is not instructive – *Textron* involved both federal question and state law claims, wherein the federal law of privileges (including the self critical analysis

privilege, applicable to federal claims) governed the entire case.  *Id.* at 528.  Such is not the case here; state law governs Plaintiffs' state law claims.

Even if Florida recognizes the privilege as a discretionary judicially-imposed right, the *Textron* court held there must be sufficiently important interests that outweigh the need for probative evidence for the privilege to apply.  The court found the privilege applied in a case involving an action seeking to recover costs of responding to groundwater contamination based on policy considerations:

> Pollution poses a serious public health risk, and that there is a strong public interest in promoting the voluntary identification and remediation of industrial pollution.  The public interest in allowing individuals and corporations to candidly assess their compliance with environmental regulations "promotes sufficiently important interests to outweigh" the interest of opposing private litigants in discovering this potentially highly prejudicial, but minimally relevant, evidence.

*Id.* at 526.  Such important policy considerations are not at issue here.

Even if such considerations were involved, the privilege can be overcome by a showing of extraordinary circumstances or special need.  Plaintiffs have a special need for the audits sought in Requests 10-11 – such information is critical to Plaintiffs' general business practice claim and cannot be obtained elsewhere.

The carrier's confidential and proprietary information objections also fail.  The information sought in Requests 19-22 is not proprietary; the Carithers and MCC are not competitors.  *See, e.g., Seta Corp. of Boca, Inc. v. Office of Atty. Gen., Dept. of Legal Affairs,* 756 So. 2d 1093, 1094 (Fla. 4th DCA 2000) (alleged trade secret and financial information not protected because the parties were not competitors); *Totaltape*, 135 F.R.D. at 203 (requiring production of claims manuals and guidelines, overruling the carrier's trade secret objection); *Woolbright*, 2012 WL 12864931, at *8 (requiring production of documents concerning other claims/lawsuits and CRNs, rejecting the carrier's confidentiality concerns; "it is highly unlikely

that Plaintiffs can obtain any competitive advantage as a result of obtaining this information.")
And the parties have agreed on a stipulated protective order to protect confidential information.

### F. *The proper time frame for Requests 1-4 and 22-23 is December 20, 2007 to August 3, 2016.*

The proper time frame for Requests 1-3 (seeking claims manuals and claims handling standards), 4 (financial motive evidence), and 22-23 (seeking evidence pertaining to "other claims/acts") is December 20, 2007 to August 3, 2016.

December 20, 2007 is the date construction defect claims under a contractor's CGL policy were found by the Florida Supreme Court to be covered so long as the contractor's work damaged other property. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007). The start date proposed by the Carithers allows discovery into how MCC has handled construction defect insurance claims since the issuance of the *J.S.U.B.* decision – evidence and information probative of whether MCC handled the Carithers' claim in accordance with its claim handling standards and practices as well as the Carithers' general business practice claim.

August 3, 2016 is the date the Carithers filed this action against MCC. This end date is appropriate because it may lead to evidence establishing recidivism and consciousness of guilt. For example, after the Eleventh Circuit issued its decision in the Appeal (April 7, 2015), MCC may have remedied prior claim handling practices. Such information is evidence of MCC's business practices and the reprehensibility of MCC's misconduct. Mid-Con's preferred range of January 1, 2010 to December 1, 2015 is insufficient and will thwart adequate conservatism of MCC's claims handling procedures, standards, and guidelines.

## II. THE UNDERWRITING FILES FOR THE CRONK DUCH POLICIES ARE DISCOVERABLE (REQUEST 5).

Underwriting materials related to Cronk Duch's policies are relevant to the Carithers' statutory bad faith claim against MCC, as they will inform the breadth of MCC's knowledge concerning the risk underwritten at the outset, as well as the parties' expectations concerning the scope of coverage. They will thus confirm any efforts by MCC to engage in post-claims underwriting. In addition, these documents may reveal MCC's undisclosed underwriting motive – to sell expensive policies to Cronk Duch with no intent to provide the coverage promised. Evidence of MCC's underwriting goals and motive to achieve those goals at any cost to its insured is relevant to the Carithers' statutory bad faith claim (especially with respect to their Section 626.9541(1)(i)(3)(b) claim). They should thus be ordered produced. *See, e.g., Royal Marco*, No. 2:07-cv-00016, at 3 (M.D. Fla. Mar. 27, 2009) (D.E. 159) (compelling production of underwriting materials in bad faith action). Any confidentiality concerns have been addressed by the parties' stipulated protective order. *See* Section I.E. *supra*.

## III. FEES SHOULD BE AWARDED TO THE CARITHERS FOR HAVING TO BRING THIS MOTION.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that upon granting a motion to compel, the court "*must*…require the party…whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* (emphasis supplied).

MCC submitted improper and unnecessary objections to Plaintiffs' First RFP, requiring the Carithers to incur substantial attorney's fees to compel the production of documents. MCC also improperly delayed production of the documents it agreed to, and eventually did, produce. *See, e.g.,* Middle District Discovery (2015) at Section III(A)(5)(c) ("A party and counsel ordinarily have complied with the duty to respond to a document request if they have: [p]roduced the documents themselves (or copies), specifically identified those documents that are being or will be produced, or specified precisely where the documents can be found and when they can be reviewed; if the documents will be produced, the response should state a specific date when the responsive documents will be available."). Such obstructionist tactics are not substantially justified. Fees should be awarded pursuant to the Rule.

## CONCLUSION

For the foregoing reasons, the Carithers respectfully request the Court issue an order: (1) ruling MCC waived its "self-critical analysis" privilege and confidential and proprietary information objections by failing to produce a privilege log; (2) overruling MCC's objections as to Requests 1-5, 9-11, 13-14, 16, 18-23 and ordering production of those documents; (3) as to Requests 1-4 and 22-23, requiring MCC to produce responsive documents for the time period December 20, 2007 to August 3, 2016; (4) granting reasonable fees as requested; and (5) granting all other relief the Court deems just, equitable, and proper.

## CERTIFICATE OF CONFERRAL

In accordance with Local Rule 3.01(g), undersigned counsel certifies that counsel for the Carithers conferred in good faith with counsel for MCC on March 24, 2017 and April 20, 2017, and that MCC opposes the relief requested herein.

Respectfully submitted,


By: */s/Mark Boyle*
**Mark A. Boyle, Esq.**
Florida Bar No. 5886
Mboyle@insurance-counsel.com
Eservice@insurance-counsel.com
**Alexander Brockmeyer, Esq.**
Florida Bar No. 105758
Abrockmeyer@insurance-counsel.com
BOYLE & LEONARD, P.A.
2050 McGregor Boulevard
Fort Meyers, Florida 33901
Telephone: (239) 337-1303
Facsimile: (239) 337-7674

*And*

By: */s/ R. Hugh Lumpkin*
**R. Hugh Lumpkin, Esq**.,
Florida Bar No.:  308196
rlumpkin@vpl-law.com
**Matthew B. Weaver, Esq.,**
Florida Bar No.:  42858
mweaver@vpl-law.com
VER PLOEG & LUMPKIN
100 S.E. Second Street, 30th Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3558


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system which will send a notice of electronic filing to all counsel of record.  I am unaware of any non-CM/ECF participants.


By:  /s/R. Hugh Lumpkin
  **R. Hugh Lumpkin, Esq.**

## SERVICE LIST

Pedro E. Hernandez, Esq.
Ronald L. Kammer, Esq.
Maureen G. Pearcy, Esq.
Nicole Di Pauli Gould, Esq.
Samantha S. Rhayem, Esq.
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
305-358-7747
305-577-1063 *facsimile*
*Attorneys for Defendant*