# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

HUGH A. CARITHERS and
KATHERINE S. CARITHERS, As
the assignee of Cronk Duch Miller &
Associates, Inc., Cronk Duch
Architecture, LLC, Cronk Duch
Craftsman, Cronk Duch Partners,
LLC, Cronk Duch Holdings, Inc.,
and Joseph S. Cronk,

    Plaintiffs,

v.                                        Case No. 3:16-cv-988-J-32MCR

MID-CONTINENT CASUALTY
COMPANY,

    Defendant.

## O R D E R

In a previous insurance coverage case, the Eleventh Circuit held that insurer Mid-Continent Casualty Company's refusal to defend its insured was incorrect. In this subsequent insurance bad faith action, Defendant Mid-Continent seeks summary judgment, arguing that although its decision to deny a defense was incorrect, the greater weight of district court cases at the time supported its decision, and therefore, that decision cannot constitute bad faith as a matter of law. In addition to Mid-Continent's Motion for Summary

Judgment, (Doc. 107), this case is also before the Court on Mid-Continent's Motion to Exclude Expert Testimony of Douglas McIntosh, (Doc. 106), and Plaintiffs Hugh and Katherine Carithers' Motion to Compel Discovery, (Doc. 96). The motions have been fully briefed, (Docs. 99; 104; 111; 115; 121; 122; 124; 125), and on May 2, 2019, the Court held a hearing on the motions, the record of which is incorporated herein. (Doc. 126). After the hearing, Mid-Continent filed the Carithers' mediation statement from the underlying action in support of its Motion for Summary Judgment. (Doc. 127). The Carithers, at the Court's direction, responded, (Doc. 131), and then filed a motion to strike the mediation statement. (Doc. 132).

**I. BACKGROUND**

In 2011, the Carithers filed an action in state court ("Underlying Action")[1] against their homebuilder, Cronk Duch,[2] for construction defects in their home. (Doc. 107-1). In August 2011, Cronk Duch tendered the Carithers' amended complaint to its insurance company, Mid-Continent. (Doc. 107-2 at 193). After multiple levels of review, Mid-Continent determined that based on the allegations of the amended complaint, it was not required to defend Cronk

---

[1] Carithers v. Cronk Duch Architecture, LLC, No. 16-2011-CA-2429 (Fla. 4th Cir. Ct. May 10, 2011).

[2] In the Underlying Action, the Carithers sued several Cronk Duch entities and Joseph Cronk individually. Unless otherwise noted, the entities and Mr. Cronk will be collectively referred to as Cronk Duch.

2

Duch. (Doc. 107 at 3–4). Cronk Duch then provided Mid-Continent with the third amended complaint, which was reviewed and similarly denied. (Docs. 107 at 5–7; 107-2 at 194–201, 204–205).

The third amended complaint alleged that "[a]ll of the foregoing defects were latent, and were discovered by the Carithers in 2010. They could not have been discovered by reasonable inspection in a prior year." (Doc. 107-2 at 217). Mid-Continent had insured Cronk Duch beginning on March 9, 2005, with Cronk Duch's last policy expiring on October 6, 2008. (Doc. 50-1 at 3). Relying on the "manifestation" trigger—an insurance coverage legal theory wherein damage does not "occur" until it is evident—Mid-Continent determined that it had no duty to defend Cronk Duch because the damage to the Carithers' home did not "manifest" until after Mid-Continent's final policy had expired. (Doc. 107-2 at 91); see also Doc. 50-1 at 4 ("Based on the pleadings, all of the Plaintiff's loss and damages occurred after the expiration of the last Mid-Continent Casualty policy.").

Cronk Duch hired its own counsel and consented to a judgment in the Underlying Action of $91,872 plus prejudgment interest of $5,856.84 and costs of $524, for a total of $98,252.84.[3] (Docs. 50-2; 50-3 at 5). Cronk Duch then

---

[3] The Final Judgment in the Underlying Action contains an error. (Doc. 50-2). The Final Judgment lists the damages for different items and adds them to be $98,872. However, if you add the damages, the correct amount is $91,872.00. This is correctly stated in the subsequent paragraph of the Judgment, which after adding prejudgment

3

assigned its claims against Mid-Continent to the Carithers, except for attorney's fees and costs of $12,737.46—the amount Cronk Duch had accrued in defending the Carithers' suit against it. (Doc. 50-3). Hugh Carithers avers that before the consent judgment was entered, he and his wife would have settled for $25,000 or less had Mid-Continent or Cronk Duch ever made such an offer. (Doc. 115-3 at 3).

Under Cronk Duch's assignment of rights, the Carithers sued Mid-Continent for breaching its duty to defend and indemnify, and Mid-Continent removed the action to federal court ("Coverage Action"). Amended Complaint, Carithers v. Mid-Continent Cas. Co. (Coverage Action), No. 3:12-CV-890-J-34TEM (M.D. Fla. Aug. 7, 2012), ECF No. 17. In that case, the Carithers advocated for the injury-in-fact trigger—an alternative insurance coverage legal theory where damage "occurs" when there is actual damage irrespective of when it is discovered—while Mid-Continent argued that the manifestation trigger applied. Coverage Action, 2013 WL 11320043, at *2 (M.D. Fla. Dec. 6, 2013). Judge Magnusson granted the Carithers' motion for summary judgment on the duty to defend, holding that damage "'occurs' at the moment that there is actual damage and the date of discovery is irrelevant." Id. (quotation marks omitted) (quoting Axis Surplus Ins. Co. v. Contravest Constr. Co., 921 F. Supp.

---

interest and costs, yields a total of $98,252.84. Id.

4

2d 1338, 1346 (M.D. Fla. 2012)). After a bench trial on the duty to indemnify, Judge Magnusson held that the damage occurred in 2005, "almost immediately after construction was complete," and therefore, Mid-Continent had a duty to indemnify Cronk Duch. Coverage Action, 2014 WL 11332308, at *2–4 (M.D. Fla. Mar. 11, 2014). The court entered judgment in favor of the Carithers, with damages of $98,252.83 and attorney's fees incurred by Cronk Duch of $13,342.46, both plus prejudgment interest. Judgment, Coverage Action, Doc. 130.

Mid-Continent appealed the rulings on the duty to defend and indemnify. The Eleventh Circuit affirmed on the duty to defend, stating:

> Given the uncertainty in the law at the time, Mid-Continent did not know whether there would be coverage for the damages sought in the underlying action because Florida courts had not decided which trigger applies. Mid-Continent was required to resolve this uncertainty in favor of the insured and offer a defense to Cronk Duch.

Carithers v. Mid-Continent Cas. Co., 782 F.3d 1240, 1246 (11th Cir. 2015). Further, the Eleventh Circuit held that injury-in-fact was the appropriate trigger for this case. Id. at 1247. However, the court reversed Judge Magnusson's damages calculation and remanded for a new determination of damages. Id. at 1251.

After the Eleventh Circuit rendered its opinion but before the mandate issued, the Carithers filed a Civil Remedy Notice ("CRN") in accordance with

5

Florida Statute § 624.155, alleging bad faith by Mid-Continent, and other violations of Florida law. (Doc. 50-8). Mid-Continent did not pay the amounts allegedly owed but responded to the CRN by claiming it had not acted in bad faith. Id.

After the mandate issued, Judge Magnusson entered an amended judgment for property damage of $26,684.77 plus interest, and attorneys' fees incurred by Cronk Duch in the Underlying Action of $13,342.46 plus interest. Coverage Action, Doc. 163. On September 14, 2015, Mid-Continent paid the amended final judgment in full. Id., Doc. 175. The district court then granted the Carithers' motion for attorney's fees in the Coverage Action, awarding a total of $323,047.35 in fees and costs, which Mid-Continent timely paid. Id., Docs. 173 & 175.

On August 3, 2016, the Carithers filed this action, alleging multiple violations of Florida Statute § 624.155, including a claim for bad faith and that Mid-Continent's actions in denying coverage for the Underlying Action were part of a general business practice—making it liable for punitive damages. (Doc. 1). Mid-Continent moved to dismiss the complaint, (Doc. 14), which the Court granted without prejudice, (Doc. 44). In its ruling, the Court limited discovery to the Cronk Duch claim only, and requested briefing on damages. Id. On September 25, 2017, the Carithers filed an Amended Complaint, (Doc. 50), and

Mid-Continent again moved to dismiss, (Doc. 62). The Court denied this motion but maintained its bifurcation of discovery. (Doc. 76).

## II. MOTION FOR SUMMARY JUDGMENT

By virtue of the assignment from Cronk Duch to the Carithers, the Carither stand in the shoes of Cronk Duch, Mid-Continent's insured. Insurers in Florida are obligated to act in good faith toward their insureds in handling claims. Bos. Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). Statutory bad faith is "[n]ot attempting in good faith to settle claims when, under all the circumstances, [the insurance company] could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." § 624.155(1)(b)1, Fla. Stat. (2018). In determining whether an insurer acted fairly and honestly toward its insured, the fact finder considers:

> (1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.

Laforet, 658 So. 2d at 63 (citing Robinson v. State Farm Fire & Cas. Co., 583 So. 2d 1063, 1068 (Fla. 5th DCA 1991)).

Although Mid-Continent raises several potentially convincing arguments, a determination of bad faith is made by analyzing the totality of the circumstances, and the Florida Supreme Court has said time and again, "it is for the jury to decide whether the insurer failed to 'act in good faith with due regard for the interests of the insured.'" Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7 (Fla. 2018) (quoting Bos. Old Colony, 386 So. 2d at 785); see also, e.g., Berges v. Infinity Ins. Co., 896 So. 2d 665, 680 (Fla. 2004); Campbell v. Gov't Emps. Ins. Co., 306 So. 2d 525, 530 (Fla. 1974). Because Mid-Continent has failed to prove that it is "entitled to judgment as a matter of law," its Motion for Summary Judgment will be denied. Fed. R. Civ. P. 56.

### III. MOTION TO STRIKE MEDIATION STATEMENT

Two days after the Court held a hearing on the pending motions, Mid-Continent filed a Notice of Filing Carithers' Mediation Statement in Support of [Mid-Continent's] Motion for Summary Judgment, (Doc. 127), which contained the Carithers' mediation statement in the Underlying Action, which states: "Prior to litigation, Plaintiffs sought to settle this matter for the amount of $90,000. They would no longer be willing to settle this action for that amount, and Defendants have made no settlement offer whatsoever." (Doc. 127-1 at 5). Mid-Continent filed the mediation statement to rebut Hugh Carithers's affidavit—the only evidence of damages—that he and his wife would have settled the Underlying Action for $25,000.

The Court directed the Carithers to file a statement explaining the difference between Hugh Carithers's affidavit, (Doc. 112-3), and the mediation statement. (Doc. 130). The Carithers filed a response, (Doc. 131), and a separate motion to strike the mediation statement, (Doc. 132). In their response to the mediation statement, the Carithers argue that the mediation statement is privileged under Florida Statute 44.405 and Middle District of Florida Local Rule 9.07(b) and is "inadmissible as having little to no evidentiary value" because it represents posturing by the party. (Doc. 131 at 2–3). However, the Carithers' motion to strike the mediation statement only argues that the mediation statement should be struck because Mid-Continent's disclosure of it was untimely. (Doc. 132).

The parties' treatment of the mediation statement, and their arguments for and against striking it, are confounding. Although mentioned in the response to Mid-Continent's filing of the Mediation Statement, the Carithers' Motion to Strike fails to reference Florida Statute § 44.405, which potentially precludes Mid-Continent from disclosing the Mediation Statement. More perplexing is the Carithers' argument that they are prejudiced by Mid-Continent not providing them a document that their own counsel created and that they knew Mid-Continent possessed. (Doc. 96-2 at 2 (Mid-Continent

asserting in its privilege log the mediation privilege for "Plaintiffs' Mediation Statement in liability action")); (Doc. 127-1).[4]

Mid-Continent's actions are equally perplexing. It claims that it previously refused to disclose the mediation statement based on Florida's mediation privilege. (Doc. 127 at 1 n.1). However, that privilege, codified in Florida Statute § 44.405, states that "[a] <u>mediation participant</u> shall not disclose a mediation communication to a person <u>other than another mediation participant</u> or a participant's counsel." § 44.405. Mid-Continent refused to be a "mediation participant," and, obviously, the Carithers were "mediation participant[s]." Thus, the Court does not understand Mid-Continent's legal basis for withholding production of the mediation statement.

Nonetheless, the mediation statement, although potentially available for cross examination of the Carithers at trial,[5] only further evidences the existence of factual disputes concerning the damages at issue. Thus, the Court does not need to rely on it in ruling on Mid-Continent's motion for summary judgment. However, because the Carithers' only asserted basis to strike the

---

[4] Attorney Robert Warren created the mediation statement and was the Carithers' counsel in the Underlying and Coverage Actions. Although not officially listed on the docket as representing the Carithers in this action, Mr. Warren was present at counsel table during the hearing on the pending motions. (Doc. 126).

[5] While normally a mediation statement is privileged, when the very issue is the amount the Carithers would have accepted to settle the Underlying Action, the mediation statement may be probative, non-privileged evidence.

mediation statement is that it was not timely disclosed—even though they created the document, knew Mid-Continent had it, and it was responsive to Hugh Carithers's recently filed affidavit—the Court will deny their motion to strike. If the Carithers wish to renew their motion to strike before trial based on different reasoning, they may do so.

### IV. MOTION TO EXCLUDE MCINTOSH

Mid-Continent seeks to exclude the Carithers' expert, Douglas McIntosh, arguing that he is unqualified, and that his opinions are unreliable and unhelpful to the jury. (Doc. 106 at 2). By contrast, the Carithers assert that McIntosh is qualified, his opinions are based on his relevant experience and review of the case, and his testimony will be helpful to the jury. (Doc. 111 at 2–4).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires judges to act as the gatekeeper to ensure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc, 509 U.S. 579, 589 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (holding that Daubert's gatekeeping obligation applies to all expert testimony). The party offering the expert testimony bears the burden of demonstrating admissibility by a preponderance of the evidence, and this burden is "substantial." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.,

402 F.3d 1092, 1107 (11th Cir. 2005). To be admissible, the proponent of the expert testimony must satisfy three requirements:

> First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be reliable as determined by a Daubert inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue.

Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010). If the testimony satisfies these three requirements, it must then still satisfy Rule 403. United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

### A. McIntosh's Qualifications

Mid-Continent contends that McIntosh is unqualified "to render an opinion on the good faith handling of a construction defect property damage claim[]" because he:

> (1) has never worked for or overseen the operations of an insurance company; (2) has, at best, limited experience handling construction defect property damage claims; (3) has no reported decisions on the trigger of coverage; and (4) has never authored a claims manual or developed procedures for handling responses to CRN's under the facts similar to the ones of this case. . . .

(Doc. 106 at 11). The Carithers assert that McIntosh's experience is sufficient for him to testify as an expert.

The first prong requires that an expert be qualified to testify competently regarding the matter he intends to address, and this can be demonstrated in several ways. See Fed. R. Evid. 702. Rule 702 allows a witness to qualify as an

expert based upon his knowledge, skill, experience, training, or education. Id.; see Frazier, 387 F.3d at 1260–61.

McIntosh is qualified to render opinions regarding whether Mid-Continent's handling of Cronk Duch's claim complied with industry standards and customs, as well as general information about the insurance industry. See Frazier, 387 F.3d at 1260–61. McIntosh has practiced law in Florida for more than thirty-six years, and for the last twenty-five years has focused on providing legal advice to insurance companies related to claims handling. (Doc. 106-1 at 2). In so doing, he has "actively assisted claims handlers such as those involved in this case[] with meeting the good faith obligations of their employer as an insurer under Florida law." Id. Although he has never been employed by an insurance company, he adjusts claims for insurance companies weekly, typically in situations where a claimant has made threats or overtures about bringing a bad faith action. (Doc. 106-2 at 198–99). These claims have included construction defect property damage claims and claims where the appropriate trigger was a question. Id. McIntosh has advised insurers what trigger should apply under a specific policy. Id. at 200. Further, McIntosh has audited claims and given opinions to insurers on whether the proper trigger was applied. Id. at 202. Additionally, McIntosh is a Certified Instructor through the Florida Department of Insurance in courses dealing with ethics, bad faith, and claims handling. Id.; (Doc. 106-2 at 41–42).

### B. Reliability of McIntosh's Opinions

Next, the Carithers must demonstrate that McIntosh's opinions are reliable. Frazier, 387 F.3d at 1261. The reliability prong is distinct from an expert's qualifications; thus, an expert can be qualified but his opinions unreliable. Id. "[A] basic foundation for admissibility [is] that '[p]roposed [expert] testimony must be supported by appropriate validation—i.e., "good grounds," based on what is known.'" Id. (second and third alterations in original) (quoting Daubert, 509 U.S. at 590). "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

An expert who relies upon his experience as the foundation for his opinions must explain how his experience supports his opinions. See Hughes, 766 F.3d at 1329 (citing Frazier, 387 F.3d at 1265). The proponent of the expert testimony has the burden of explaining how the expert's experience "led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." Frazier, 387 F.3d at 1265.

McIntosh has shown that he relied on his experience in formulating his opinions, e.g., Doc. 106-2 at 45, 95, 105, 113, 182, 192, and there is not "too great an analytical gap" between the opinions offered and his experience, see Joiner,

522 U.S. at 146. It logically follows that someone who adjusts claims weekly, has advised insurance companies on proper claims handling for more than twenty-five years, and audits claims files and provides opinions to insurers about whether the proper trigger was applied will be able to rely on that experience to formulate an opinion about whether Mid-Continent properly handled Cronk Duch's claim.

That McIntosh cannot disclose specific legal advice he gave clients does not render his expert opinions unreliable. See Doc. 106 at 13 (arguing that McIntosh's opinions are unreliable because he asserted the attorney client privilege in response to certain questions regarding advice he has given clients). However, the Court will look carefully upon any assertion of the attorney client privilege. It appears that McIntosh can testify about his experience specific to the issues without disclosing protected confidential communications.[6] Further, any limitations McIntosh places on his testimony can be considered by the jury in determining its weight.

### C. Helpfulness of McIntosh's Opinions

The final requirement that the Carithers must demonstrate is that the proffered expert testimony will assist the trier of fact. Frazier, 387 F.3d at 1262.

---

[6] For example, without invading the attorney client privilege, McIntosh can answer generally whether he has ever advised clients regarding the appropriate trigger of coverage differently than his opinions in this case and why.

"By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63 (citations omitted). "[W]here the 'weight of legal authority on the coverage issue' and the reasonableness of the coverage decision are at issue, we would expect [expert] opinions considering, applying, and clarifying such legal authority to be relevant." Garcia v. GEICO Gen. Ins. Co., 807 F.3d 1228, 1235 (11th Cir. 2015) (citation omitted).

McIntosh's opinions about different trigger theories and how the weight of legal authority informs an insurer's decision whether to provide a defense are not within the common knowledge of the average juror. Id. McIntosh is permitted to testify as an expert, and Mid-Continent may object at trial to specific opinions that it believes are unfounded.

## V. CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Mid-Continent's Motion for Summary Judgment, (Doc. 107), is **DENIED**.

2. Mid-Continent's Motion to Exclude Expert Testimony of Douglas McIntosh (Doc. 106) is **DENIED**.

3. The Carithers' Motion to Strike, Exclude, and/or Preclude Mid-Continent Casualty Company from Relying on the Mediation Statement (Doc. 132) is **DENIED without prejudice**.

4. Not later than **August 9, 2019**, the Carithers shall file a proposed discovery plan (including deadlines) for their pattern and practice claim and a separate memorandum, not to exceed ten pages, discussing whether the Court should bifurcate their pattern and practice claim from the current bad faith claim.

5. Not later than **September 3, 2019**, Mid-Continent shall file separate responses, not to exceed ten pages, to the Carithers' proposed pattern and practice discovery plan and their memorandum on whether the Court should bifurcate the case.

6. The Carithers' Motion to Compel, (Doc. 96), is **DEFERRED**. The Court will rule on the motion after receiving briefing on the Carithers' pattern and practice discovery plan and bifurcation.

**DONE AND ORDERED** in Jacksonville, Florida this 16th day of July, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies:

Counsel of record